**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Jerry B.,** | |
| **Plaintiff,** | **1:24-cv-06435 (SDA)** |
| -against- | **OPINION AND ORDER** |
| **Frank Bisignano, Commissioner of Social Security,** | |
| **Defendant.** | |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Jerry B. ("Jerry" or "Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB"). (Compl., ECF No. 1.) Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner. (Pl.'s Mot., ECF No. 16.) For the reasons set forth below, Plaintiff's motion is GRANTED and the decision of the Commissioner is remanded for further administrative proceedings.

**BACKGROUND**

**I.       Procedural Background**

Jerry filed an application for DIB on November 6, 2019, with an alleged onset date of February 1, 2019. (Administrative R., ECF No. 20 ("R."), 156, 723.) The Social Security Administration ("SSA") initially denied his application on February 24, 2020 and again, following his request for reconsideration, on July 21, 2020. (R. 76, 83.) On September 18, 2020, Jerry filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 95-96.) An administrative

hearing was held via telephone on December 17, 2020 before ALJ Angela Banks. (R. 28-46.) Jerry was represented at the hearing by attorney J. Anklowitz. (R. 30-31.) In a decision dated January 13, 2021, ALJ Banks found Jerry not disabled. (R. 15-23.) Thereafter, Jerry requested review of the ALJ's decision from the Appeals Council. (R. 7-8.) The Appeals Council denied the request on June 28, 2021. (R. 1-3.)

On August 27, 2021, Jerry filed an action in this Court for review of the Commissioner's decision. On November 9, 2022, District Judge Carter entered a Stipulation and Order remanding the action to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and entered judgment. (R. 788-89.) On April 5, 2023, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for resolution of certain issues. (R. 792-94.)

On May 13, 2024, an administrative hearing was held before ALJ Kim. (R. 740-65.) In a decision dated May 31, 2024, the ALJ found Jerry not disabled. (R. 723-34.)  The Appeals Council denied Jerry's request for review, making ALJ Kim's decision the Commissioner's final decision. (R. 1-3.) This action followed.

## II.    Non-Medical Evidence

Born on October 17, 1974, Jerry was 44 years old on the alleged onset date. (R. 733.) Jerry has a high school education and past relevant work as a warehouse worker. (*Id.*)

## III.    Medical Evidence Before the ALJ

The Court adopts the summary of the medical evidence set forth by the parties (*see* Pl.'s Mem., ECF No. 17, at 7-13; Comm'r Br., ECF No. 21, at 1-3) and only briefly summarizes the medical evidence to the extent necessary to address Plaintiff's arguments.

In February 2019, Jerry presented to the emergency room complaining of low back pain after he fell at work and a machine fell on top of him. (R. 221.) Jerry began treatment with orthopedist Jonathan Gordon, M.D. (*See, e.g.*, R. 342-45, 684-88, 711-14. 930-39, 967.) He also attended physical therapy for his lumbar impairment from February 2019 to May 2019. (R. 273-320.) In February 2020, Jerry underwent an MRI of the lumbar spine, which showed an annular disc bulge at L5-S1 contributing to mild left foraminal narrowing and bilateral facet arthropathy at L4-5 and L5-S1. (R. 673.)

Anthony Cicoria, M.D., performed an independent medical examination related to Jerry's worker's compensation claim on April 25, 2019. (R. 399-402.) On examination, Dr. Cicoria noted, *inter alia*, lumbar spine flexion of 40 degrees and positive straight leg raise. (R. 400-01.) He diagnosed lumbar disc herniation and lumbar strain with radiculopathy. (*Id.*) Dr. Cicoria opined that Jerry had a 25 pound lifting restriction with no frequent bending or twisting and should not sit or stand in one place for prolonged time. (*Id.*)

On July 22, 2019, Michael Miller, M.D., performed an independent orthopedic evaluation. (R. 412-15.) On examination, Dr. Miller noted tenderness in the paralumbar musculature bilaterally and flexion of 45 degrees, compared to a normal range of 70-90. (R. 413.) Straight leg raise was negative bilaterally. (*Id.*) Dr. Miller also noted tenderness and limited range of motion in the left wrist. (*Id.*) Dr. Miller diagnosed lumbosacral strain/sprain. (*Id.*) Dr. Miller opined that Jerry was limited to frequently lifting up to 20 pounds and occasionally lifting up to 50 pounds. (R. 414.)

On January 17, 2020, Jerry saw Saundra Nickens, M.D., for an internal medicine consultative examination. (R. 652-55.) On physical examination, Dr. Nickens noted normal

3

findings for gait and station, including normal gait and ability to walk on heels and toes without difficulty, tenderness of the back and left wrist, lumbar spine flexion of 70 degrees with pain and negative straight leg raise bilaterally. (R. 653-54.) Dr. Nickens diagnosed left wrist and lower back pain and opined that Jerry had mild limitations with activities requiring lumbar flexion due to back pain. (R. 654-55.)

On February 24, 2020, S. Sonthineni, M.D., a non-examining state agency review physician considering Jerry's initial claim for benefits, found no medically determinable impairment had been established. (R. 48-54.)

On November 10, 2020, Jerry's treating orthopedist Dr. Gordon opined that he could lift/carry 10 pounds occasionally; stand/walk one to two hours in an eight hour workday with the recommended breaks; sit for one to two hours in an eight hour workday; required the ability to shift positions at will from sitting, standing or walking; required unscheduled breaks during the day; and could never climb, bend, balance, stoop, kneel, crouch, or crawl. (R. 716-18.) Dr. Gordon further opined that Jerry could frequently reach in any direction, constantly finger, handle and feel, and occasionally push and pull. (R. 718.)

Jerry saw Dr. Miller again in February 2022 for an independent medical examination. (R. 957.) Dr. Miller opined that Jerry was limited to frequently lifting, carrying, pushing or pulling 20 pounds and occasionally lifting, carrying pushing or pulling 50 pounds. (R. 959) In March 2022, Dr. Miller opined that, in addition to the lifting and carrying restrictions, Jerry occasionally could sit, stand, walk, climb, kneel, bend, stoop and squat; occasionally use his hands for simple grasping and fine manipulation; occasionally reach overhead and below shoulder level, drive a

vehicle and operate machinery; and should never be exposed to temperature extremes, high humidity or adverse environmental conditions. (R. 961-62.)

In July 2022, S. Stradley, M.D., a non-examining state agency review physician considering Jerry's claim upon reconsideration, opined that he could perform light work with some restrictions, including that he was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently and that he could stand/walk for 6 hours and sit 6 hours in an eight hour workday. (R. 62.) In August 2022, after Jerry had returned to work, Dr. Miller provided a similar opinion to his March 2022 opinion limited to frequently lifting, carrying, pushing or pulling 20 pounds and occasionally lifting, carrying pushing or pulling 50 pounds. (R. 985-86.)

IV.    **The May 13, 2024 Administrative Hearing**

At the May 13, 2024 hearing, Jerry testified that he was unable to work from February 2019 through July 2022 due to severe pain in his lower back, legs, and left wrist. (R. 749.) During that time period, Jerry testified that his daily routine included stretching, showering, eating, and trying to walk. (R. 750.) He experienced back pain every day and left wrist pain "all the time." (*Id.*) Jerry wore a doctor-prescribed brace on his left wrist and reported limitations in grabbing, holding and gripping. (R. 751.) Jerry testified that he had difficulty bending and he could lift five to ten pounds. (*Id.*) He comfortably could sit or stand for approximately 25 to 30 minutes and could walk a block or two and that numbness in his back and shooting pain in his legs prevented him from walking further. (*Id.*) Jerry testified that he did not drive and needed assistance with dressing and bathing/showering, and could not clean, cook or shop due to his left wrist. (R. 752-53.) Jerry testified that he resumed full time employment in July 2022. (R. 746-47.)

Vocational expert ("VE") Esperanza Distefano also testified at the May 13, 2024 hearing. (R. 754-63.) The ALJ first asked VE Distefano to assume a hypothetical individual with the same age, education and past work experience as Jerry, who could perform work at the light exertional level, except the individual must be allowed to stand up to five minutes after every 30 minutes of sitting and to sit for up to five minutes after every 30 minutes of standing while remaining on task; could frequently operate hand controls, reach, push, pull, handle, finger, and feel with the left upper extremity; could occasionally push, pull and operate foot controls with both lower extremities; could occasionally kneel, crouch, stoop, balance, and crawl; could occasionally climb stairs and ramps; could never climb ladders, ropes or scaffolds; could never be exposed to unprotected heights or moving mechanical parts; could tolerate occasional exposure to vibration; and could understand, carry out, and remember simple instructions and use judgment to make simple, work-related decisions. (R. 756-57.) VE Distefano testified that, based upon those limitations, the hypothetical individual could not perform Jerry's past work, but there were other jobs in the national economy that such individual could perform, including mail clerk (DOT No. 206.687-026), office helper (DOT No. 239/567-010) and marker (DOT No. 209.587-034). (R. 757-58.)

The ALJ then asked VE Distefano about a second hypothetical individual with the same age, education and past work experience as Jerry and the same residual functional capacity as in the first hypothetical, but the individual must be allowed to sit or stand at will. (R. 759.) VE Distefano testified that such an individual could perform the same three jobs as in the first hypothetical. (*Id.*)

For a third hypothetical, the ALJ asked VE Distefano to assume an individual with the same age, education and past work experience as Jerry and the same residual functional capacity as in the first or second hypothetical, except the individual also would be off task 20% of the workday and absent from work two or more days per month. (R. 760.) VE Distefano testified that an individual who was off task 20% of the workday or absent from work two or more days per month would not be able to maintain any employment. (*Id.*)

Jerry's attorney asked VE Distefano about an individual limited to occasional handling, fingering, and feeling with the left upper extremity and VE Distefano testified that he would not return those light jobs because those jobs would require frequent bilateral reaching, handling and fingering. (R. 761.) However, when the ALJ asked if it was occasional handling, fingering, and feeling of the left non-dominant upper extremity, VE Distefano testified that the individual would be able to perform the jobs of a storage facility rental clerk (DOT No. 295.367-026), which the individual would be able to perform using their dominant upper extremity frequently even if their non-dominant upper extremity was limited to occasional use. (R. 761-62.) VE Distefano further testified that such an individual also could perform the jobs of a furniture rental consultant (DOT No. 295.357-018) or an usher (DOT No. 344.677-014), both of which require occasional reaching, handling and fingering with bilateral upper extremity. (R. 762.) Finally, Jerry's attorney asked if those three jobs, or all jobs, would be eliminated if the individual was unable to sit, stand and walk for more than six hours in an eight-hour workday, and VE Distefano testified that such a restriction would eliminate all full-time work. (R. 763.)

**V.    The ALJ's Decision**

Applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards, at step one, the ALJ found that Jerry had not engaged in substantial gainful activity since the alleged onset date of February 1, 2019 through July 11, 2022. (R. 725-26.) The ALJ noted that Jerry was requesting a closed period ending on July 11, 2022, after which he returned to work full time, and determined that Jerry had engaged in substantial gainful activity since July 12, 2022. (R. 723, 726.) Thus, the ALJ stated that the remaining findings addressed the closed period. (R. 726.)

At step two, the ALJ found that Jerry had severe impairments of sciatica, left wrist sprain, lumbar disc herniation and lumbar spine bilateral facet arthropathy. (R. 726.) At step three, the ALJ found that Jerry's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and 1.18 (both relating to abnormality of major joints). (R. 726-27.)

Prior to proceeding to step four, the ALJ found that Jerry retained the Residual Functional Capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b),[1] except:

> [H]e must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. He can frequently operate hand controls, push, pull, handle,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). To perform light work, an individual "must have the ability to do substantially all of these activities." *Id.* "The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time." *Thomas James O. v. Comm'r of Soc. Sec.*, No. 24-CV-04635 (GRJ), 2025 WL 1002009, at *4 (S.D.N.Y. Apr. 2, 2025) (quoting *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009)).

finger, and feel with the left nondominant upper extremity. He can occasionally push or pull or operate foot controls with both lower extremities. He can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the Selected Characteristics of Occupations of the DOT, and can occasionally climb stairs and ramps. He can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. He can tolerate occasional exposure to vibration. In addition, he can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions.

(R. 727.)

In making this determination, the ALJ considered the medical evidence in the record. (R. 728-32.) The ALJ also discussed the persuasiveness of the medical opinions and prior administrative medical findings in the record. The ALJ found Dr. Cicoria's April 2019 opinion persuasive in part as it was partly supported by his examination findings of limited range of motion of the spine and positive straight leg raise, but the term "prolonged time" was vague. (R. 731.) The ALJ also found the opinion partially consistent with other evidence in the record, discussing treatment notes from Jerry's treating orthopedist, Dr. Gordon, which also showed tenderness of the lumbar spine with limited range of motion, but also later examinations showing tenderness with increased flexion and negative straight leg raise. (*Id.*)

The ALJ found Dr. Miller's July 2019 opinion not persuasive because it was not supported by his examination, which included findings of tenderness and limited range of motion in the spine, and not consistent with other evidence in the record, including the July 2020 consultative examination. (R. 731.) The ALJ found Dr. Nickens's opinion somewhat persuasive as it was partly supported by her examination and partly supported by record with respect to back pain including Dr. Miller's July 2019 examination but noted that Dr. Nickens's opinion that Jerry's limitations were "mild" was vague. (R. 731-32.) The ALJ found state agency physician Dr. Sonthineni's opinion of no medical impairment not persuasive because, although it was supported by his

9

summary of the record noting normal imaging and objective findings, it was not consistent with the complete record and, in particular, the February 2020 MRI. (R. 730.)

The ALJ Dr. Gordon's November 2020 opinion not persuasive because he found Dr. Gordon's "extreme limitations" not supported by his treatment records and inconsistent with other evidence in the record. (R. 732.) The ALJ also found Dr. Miller's opinion from February, March and August 2022 unpersuasive because they were not supported by Dr. Miller's examinations or consistent with other evidence in the record indicating that Jerry could perform light work. (R. 731-32.) The ALJ found the July 2022 opinion of state agency physician Dr. Stradley persuasive in part because it was partly supported by his summary of record and the April 2019 consultative examination and partly consistent with the record. (R. 730.)

At step four, the ALJ found that Jerry was unable to perform his past relevant work as a warehouse worker. (R. 733.) At step five, the ALJ considered Jerry's age, education, work experience and RFC and concluded, based on VE DiStefano's testimony, that there were jobs existing in significant numbers in the national economy that Jerry could perform, including Mail Clerk (DOT Code 209.687-026), Office Helper (DOT Code 239.567-010) and Marker (DOT Code: 209.587-034). (R. 733-34.) Therefore, the ALJ found that Jerry was not under a disability as defined under the Act at any time between February 1, 2019 the date of the ALJ's decision.[2] (R. 734.)

---

[2] As Plaintiff notes, he requested a closed period of disability from February 1, 2019 through July 11, 2022. (*See* Pl.'s Mem. at 15 n. 2.) The ALJ found that Jerry engaged in substantial gainful activity beginning on July 12, 2022 and addressed the remaining findings to the period when Jerry did not engage in substantial gainful activity, *i.e.*, February 1, 2019 through July 11, 2022. (R. 726.)

**LEGAL STANDARDS**

I.    **Standard Of Review**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*, No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010)).

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 447-48 (cleaned up). "But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448 (quoting *See Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)). "The substantial

11

evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable

factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original).

## II.    Determination Of Disability

A person is considered disabled for benefits purposes when he is unable "to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

In determining whether an individual is disabled, the Commissioner must consider:

"(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts;

(3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d

1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating

disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period

12

of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (internal citations omitted).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The claimant bears the burden of proof as to the first four steps. *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that he cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education, and past relevant work experience. *See id.* at 51-52.

### III.   Regulations Regarding Consideration Of Medical Opinions And Prior Administrative Medical Findings

Under the regulations applicable to Plaintiff's claim, the ALJ considers five factors in evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Using these factors, the most important of which are supportability and consistency, the ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* § 404.1520c(b).

With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). While the ALJ "may, but [is] not required to, explain how [he] considered" the factors of relationship with the claimant, the medical source's specialization, and other factors, the ALJ "will explain

14

how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings[.]" *Id.* § 404.1520c(b)(2). An ALJ must provide sufficient explanation to allow a reviewing court to "trace the path of [the] adjudicator's reasoning[.]" *Amber H. v. Saul*, No. 20-CV-00490 (ATB), 2021 WL 2076219, at *6 (N.D.N.Y. May 24, 2021) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) ("We expect that the articulation requirements in these final rules will allow a ... reviewing court to trace the path of an adjudicator's reasoning[.]")). An ALJ commits procedural error by failing to explain how he considered the supportability and consistency of medical opinions in the record. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). A reviewing court still may affirm if "a searching review of the record" assures it "that the substance of the [regulation] was not traversed." *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

## DISCUSSION

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC and the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. at 5, 16-20.) Plaintiff argues that the ALJ erred in the assessment of Dr. Gordon's opinion and failed to properly assess Jerry's ability to perform work activities on a function-by-function basis. (Pl.'s Mem. at 17-20.) In response, the Commissioner argues that the ALJ appropriately considered and evaluated the relevant evidence of record and that the ALJ's decision is free of legal error and supported by substantial evidence. (Comm'r Br. at 1, 10-18.)

I.    **The ALJ's Assessment Of Dr. Gordon's Opinion**

In finding Dr. Gordon's opinion unpersuasive, the ALJ found that Dr. Gordon supported his opinion by checking off findings of reduced range of motion, positive straight leg raise and muscle spasm, but found that the "extreme limitations" were neither supported by Dr. Gordon's records not consistent with other records such as the January 2020 consultative examination. (R. 732; *see also* R. 719.) Plaintiff argues that Dr. Gordon's treatment notes contained positive clinical findings supporting the objective signs Dr. Gordon checked off, which the ALJ did not acknowledge in the supportability analysis. (Pl.'s Mem. at 19 (citing R. 476-77, 677, 682, 687, 692, 697, 709-10, 714-15, 933, 938).) Plaintiff also contends that the questionnaire that Dr. Gordon completed included additional supporting evidence that the ALJ did not address, including references to the February 2020 in support of his assessment of lifting/carrying limitations and notes that Jerry had worsening back pain when pushing/pulling over 10 pounds, in support of his assessment that Jerry could occasionally push and pull. (Pl.'s Mem. at 19; R. 716, 718.)

The Commissioner argues that the ALJ did not ignore Dr Gordon's treatment records because the "findings are essentially the same as the ones which the ALJ observed that Dr. Gordon noted in his opinion." (Comm'r Br. at 15.) But that is precisely the point. The ALJ did not acknowledge that Dr. Gordon's treatment records supported the findings that he indicated were the basis for his opinion and instead concluded that Dr. Gordon's opinion was not supported by his own records. (R. 732.) The ALJ appears to have reached this conclusion because "[d]uring exams with Dr. Gordon, the claimant's muscle strength was 5/5." (R. 732 (citing R. 241, 687, 714,

16

938, 951).[3]) However, Dr. Gordon did not opine that muscle weakness was one of the objective signs supporting his opinion (*see* R. 719) and the ALJ provided no explanation of how those findings were at odds with Dr. Gordon's opinion. *See Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 618-19 (S.D.N.Y. 2022) (ALJ erred in relying on other clinical and objective findings as basis to find opinion not well supported without explanation of why findings at odds with physician's opinion). Moreover, the ALJ also did not acknowledge, in assessing supportability, the additional evidence set forth by Dr. Gordon in the questionnaire. *See Smith v. O'Malley*, No. 23-CV-02339 (JLC), 2024 WL 1983881, at *11 (S.D.N.Y. May 6, 2024) (remanding when ALJ did not explain how evidence submitted by treating physician failed to support her opinion).

The Commissioner argues that the ALJ's rationale can be gleaned from the decision as a whole because the ALJ discussed Dr. Gordon's positive clinical findings in explaining why other opinions, including those of Dr. Stradley and Dr. Cicoria, were not sufficiently restrictive. (*See* Comm'r Br. at 15.) However, "supportability and consistency . . . are distinct factors that require separate analysis." *Rosario v. Commissioner of Social Security*, No. 20-CV-07729 (SLC), 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). Thus, the ALJ's discussion of Dr. Gordon's treatment records in analyzing the consistency of other medical opinions does not excuse the ALJ's failure to consider that evidence in assessing supportability. *See id.* ("Under the new regulations, the ALJ

---

[3] Dr. Gordon's treatment notes only reference muscle strength with respect to two muscles in the lower leg, the Extensor Halicus Longus ("EHL") and the Tibialis Anterior ("TA") (*see* R. 241, 687 714, 938, 951 (noting "EHL, TA muscle strength is 5/5"), which can be used to assess disorders in a particular area of the spine. *See* DeJong's The Neurological Examination, 8th Ed. CH27, NEUREX8TH CH27 ("Weakness of the EHL is a key clinical sign of L5 radiculopathy."); *see also id.* CH47 ("In L5 lesions, weakness primarily occurs in[,]" *inter alia*, "the tibialis anterior[.]").

must explain in all cases, how he or she considered both the supportability and consistency factors, as they are the most important factors[.]") (cleaned up).

For these reasons, the Court finds that the ALJ's supportability analysis is grounds for remand. *See Ballantyne T. v. Comm'r of Soc. Sec.*, No. 23-CV-11182 (HJR), 2025 WL 551820, at *8 (S.D.N.Y. Feb. 19, 2025) ("An ALJ's failure to properly consider and apply the requisite factors for evaluating medical source opinions is grounds for remand.") (citing cases); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-04630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) ("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." (cleaned up)).

As for consistency, the ALJ found that Dr. Gordon's opinion was not consistent with other records, citing the January 2020 consultative examination. (R. 732.) Plaintiff argues that this is insufficient because the ALJ failed to consider how consistent Dr. Gordon's opinion was consistent with the other opinions in the record, specifically Dr. Miller's March and August 2022 opinions that Jerry could occasionally sit, stand, and walk. (Pl.'s Mem. at 19 (citing R. 961-62, 985-86).)

"Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." *Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 348 (S.D.N.Y. 2022). The parties dispute whether a proper consistency analysis requires the ALJ to consider the consistency of medical opinions with each other. (*See* Pl.'s Mem. at 20; Comm'r Br. at 16; Pl.'s Reply Mem., ECF No. 22, at 3-4.) As this Court previously has explained, the regulations require that an ALJ assess each

18

medical opinion's consistency with "the other evidence in the record[.]" *Young v. Kijakazi*, No. 20-CV-03604 (SDA), 2021 WL 4148733, at *10 (S.D.N.Y. Sept. 13, 2021). Certainly, this "can encompass other medical opinions[.]" *Michael J. M. v. Comm'r of Soc. Sec.*, No. 23-CV-00683 (BKS) (CFH), 2024 WL 4665085, at *7 (N.D.N.Y. Aug. 19, 2024), *report and recommendation adopted*, 2024 WL 4198497 (N.D.N.Y. Sept. 16, 2024).

Although some courts have concluded that "[a]n ALJ's failure to consider the consistency of the physicians' opinions with each other constitutes legal error[,]" *Aliyah R. H. v. Comm'r of Soc. Sec. Admin.*, No. 24-CV-09924 (CS) (GRJ), 2026 WL 579195, at *5 (S.D.N.Y. Mar. 2, 2026) (quoting *Smith v. O'Malley*, No. 23-CV-02339 (JLC), 2024 WL 1983881, at *12 (S.D.N.Y. May 6, 2024), the Court finds that whether the absence of this analysis is an error requiring remand is a determination that must be made on "a case-by-case basis[,]" *Michael J. M.*, 2024 WL 4665085, at *7, and the ultimate focus remains on the consistency of each opinion with the record as a whole. For example, the Second Circuit recently found that an ALJ's rejection of four out of five medical opinions for lack of consistency was not supported by substantial evidence when "each rejected opinion was largely consistent with the others[.]"[4] *Nunez v. Comm'r of Soc. Sec.,* 164 F.4th 60, 74 (2d Cir. 2025).

Here, the portion of Dr. Gordon's opinion regarding sitting, standing and walking was consistent with two of Dr. Miller's opinions, but inconsistent with three other opinions that the ALJ found partially persuasive. (*See* Pl.'s Mem. at 19-20; Comm'r Br. at 16.) On remand, the ALJ

---

[4] By contrast, in *Young*, which was addressed in the prior paragraph of text, the opinions at issue were "significantly inconsistent with one another in the areas where they substantively overlap[ped]." *Young*, 2021 WL 4148733, at *10.

shall consider whether further analysis of the consistency of the medical opinions with each other is warranted. *See Michael J. M.*, 2024 WL 4665085, at *7 (finding that such analysis is a "best practice").

**II.** **The ALJ's Assessment Of Jerry's Ability To Perform Work On A Function-By-Function Basis**

Plaintiff also argues that the ALJ erred by failing to properly assess Jerry's "ability to perform work activities on a function-by-function basis before finding him capable of performing work at all exertional levels." (Pl.'s Mem. at 20.) "In reaching a conclusion about a claimant's RFC, an ALJ 'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.'" *Johnson v. Colvin*, No. 14-CV-02334 (CM) (JLC), 2015 WL 400623, at *14 (S.D.N.Y. Jan. 30, 2015), *report and recommendation adopted*, 2015 WL 3972378 (S.D.N.Y. June 1, 2015) (quoting SSR 96–8p, 1996 WL 374184, at *1 (SSA July 2, 1996)). However, "[w]here an ALJ's analysis regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, remand is not necessary merely because an explicit function-by-function analysis was not performed." *Capezza v. O'Malley*, No. 23-CV-01813 (SDA), 2024 WL 642961, at *11 (S.D.N.Y. Feb. 15, 2024) (citing *Domm v. Colvin*, 579 F. App'x 27, 28-29 (2d Cir. 2014) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Because the Court finds that the ALJ committed an error in the assessment of Dr. Gordon's opinion, which could affect the RFC determination, the Court does not address whether the ALJ's RFC determination is supported by substantial evidence. *See Ballantyne T.*, 2025 WL 551820, at *11.

III.    **Nature of Remand**

The Court finds that remand for further administrative proceedings is the proper remedy in this case so that they ALJ may reconsider the medical opinion evidence. *See Estrada v. Comm'r of Soc. Sec.*, No. 21-CV-00153 (SDA), 2022 WL 3337753, at *15 (S.D.N.Y. Aug. 13, 2022). This is not the rare case where a remand for the payment of benefits would be appropriate, as the evidence in the present record "does not unequivocally support a finding of disability." *See Martin v. Comm'r of Soc. Sec.*, No. 20-CV-01003 (AT) (SDA), 2020 WL 8224884, at *4 (S.D.N.Y. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 197429 (S.D.N.Y. Jan. 20, 2021).

## CONCLUSION

For the reasons stated above, Plaintiff's motion is GRANTED, the Commissioner's decision is reversed and this action is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.

Dated:    New York, New York
          June 3, 2026

_____
STEWART D. AARON
United States Magistrate Judge

21